# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FREDERICK GRAHAM,** | : | |
|     **Plaintiff** | : | |
| | : | No. 1:19-cv-1571 |
|     v. | : | |
| | : | (Judge Kane) |
| **IAN CONNORS, et al.,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

On August 29, 2019, pro se Plaintiff Frederick Graham ("Plaintiff"), who is presently confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), initiated the above-captioned action by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.) In an Order dated September 4, 2019, that court transferred the action to this Court for further proceedings. (Doc. No. 4.)

On September 11, 2019, Plaintiff filed a motion for permanent injunctive relief (Doc. No. 6) and motion for a temporary injunction (Doc. No. 7). In an administrative Order dated September 12, 2019, the Court directed Plaintiff either to pay the requisite filing fee or file a completed motion for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 10.) On September 18, 2019, the Court received from Plaintiff a motion requesting permission to use the Court's electronic filing system (Doc. No. 11) and a motion pursuant to Local Rule 26.1(f) (Doc. No. 12). The next day, Plaintiff filed a supplement to his motion for a temporary injunction (Doc. No. 13) and a supplemental motion for injunction (Doc. No. 14).

In an Order dated September 20, 2019, the Court noted that in his supplement, Plaintiff requested an emergency court order on the basis that he is experiencing organ failure due to his hunger strike, which has caused him to miss at least 219 consecutive meals. (Doc. No. 15.)

Plaintiff suggested that medical staff at USP Lewisburg were not providing adequate medical care in the form of a proper force-feeding protocol. (Id.) Given Plaintiff's allegations of immediate harm, the Court directed the Government to respond to Plaintiff's motions for injunctive relief by 12:00 p.m. on Monday, September 23, 2019. (Id.) The Government filed its brief in opposition (Doc. No. 17) and exhibits in support thereof (Doc. No. 18) on September 23, 2019.

On September 23, 2019, Plaintiff filed a motion for leave to proceed in forma pauperis (Doc. No. 19), a copy of his prisoner trust fund account statement (Doc. No. 20), and a motion for a temporary injunction (Doc. No. 21). In an administrative Order dated September 23, 2019, the Court directed the Warden of USP Lewisburg to provide to the Court, within fifteen (15) days, a certified copy of Plaintiff's inmate account statement. (Doc. No. 22.) The Court received the certified statement on September 30, 2019. (Doc. No. 23.) Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[1] the Court will perform its mandatory screening of Plaintiff's complaint. For the reasons set forth below, the Court will grant Plaintiff's motion for leave to proceed in forma pauperis, dismiss his complaint with leave to amend, and deny his various motions for relief.

## I. BACKGROUND

### A. Plaintiff's Complaint

Plaintiff names Ian Connors ("Connors") as the sole Defendant in this action.[2] Plaintiff states:

---

[1] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

[2] Although Plaintiff styles this matter to be against "Ian Connors, et al.," Defendant Connors is the only individual named as a defendant in the caption of this case.

2

> Comes now, Fredrick Graham, Plaintiff in above cause arising against conspirators, private contractors and Defendants employed at the federal prison and region of U.S.P. Lewisburg, PA (SMU)-(Special Management Unit); and FCC Terre Haute (USP), and U.S.P. Florence, CO (High); Graham is a federal prisoner housed at the LEW (SMU), and has been on a full hunger strike for (151 missed meals); additionally and seeks a[n] "injunctive relief" in the process of the "change of venue" to Pennsylvania. Mr. Graham has been denied adequate medical treatment, and has been in the allegedly seriously harsh conditions of confinement due to the private contractor Dr. A. Edinger, Regional Directors and Wardens creating this request for permanent injunction; daily force feedings; hospital placement or closure of (SMU).
> Wherefore, Mr. Graham (Plaintiff) now gives all claims jurisdiction to the Clerk of the Court of the (Special Management Unit) at U.S.P. Lewisburg, PA that [arose] out of Cause No. 2:19-cv-00276 JRS-(DLP)[3] for change of venue jurisdiction, to give Pennsylvania (Defendants) employed as cooperators and (Graham) the ability to present their responses . . . for, or instead of transfer arising out of the closing process of the (SMU) program here at LEW (SMU), and other procedural rights under "Bivens" and § 1985(3) claims.

(Doc. No. 1 at 1-2.)

### B. Plaintiff's Various Motions

Plaintiff has filed several motions for relief, many of which seek, in part, injunctive relief related to his hunger strike. In his motion for permanent injunctive relief, Plaintiff maintains that he has been on a "food/water strike" for over fifty (50) days and has missed 151 meals "to provide prisoners su[b]stantial rights; protections against harsh mistreatment; malpractice and guarantee proper medical assistance during hunger strikes instead of allowing inmates to die." (Doc. No. 6 at 2 (internal quotation marks omitted).) As relief, he seeks the termination of Dr. Edinger's license as a clinical director because Dr. Edinger supervises staff who allegedly have:

---

[3] On June 10, 2019, Plaintiff filed a Bivens action against Defendant Connors and other Bureau of Prisons officials in the United States District Court for the Southern District of Indiana, raising several Eighth Amendment claims. See Graham v. Connors, No. 2:19-cv-276 (S.D. Ind.) (Doc. No. 1.) On June 13, 2019, that court directed Plaintiff to show cause why his complaint should not be dismissed for failure to state a claim upon which relief can be granted. See Graham v. Connors, No. 2:19-cv-276 (S.D. Ind.) (Doc. No. 3.) On August 22, 2019, that court dismissed Plaintiff's action without prejudice for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). See Graham v. Connors, No. 2:19-cv-276 (S.D. Ind.) (Doc. No. 11).

3

(1) force-fed Plaintiff under unsanitary conditions; (2) required Plaintiff to walk upstairs after he was forced to stand in a holding cell; (3) refused to allow Plaintiff to visit an outside hospital; (4) discontinued force feedings without notice; (5) refused to give Plaintiff IV fluids; (6) failed to treat Plaintiff's complaints of chest pains; and (7) improperly stuck him with needles. (Id. at 3.) Plaintiff also requests kidney and liver treatment, a "soft sole" permit to treat various injuries, and dental work for his damaged front teeth. (Id. at 4.)

In support of his motion for a temporary injunction, Plaintiff alleges that various staff members at USP Lewisburg have used excessive force against him by way of force-feedings and the use of restraints, and that he has been denied clean linens, clothing exchange, and mail. (Doc. No. 7 at 2.) Plaintiff also suggests that Correctional Officers Beaver and Lengyel assaulted him when he refused to "consum[e] the tampered with meals that are cold." (Id.) As relief, Plaintiff requests "placement in medical (only), [and] hospital supervision." (Id. at 3.) Plaintiff reiterates many of these allegations in his motion pursuant to Local Rule 26.1(f) (Doc. No. 12), his supplement (Doc. No. 13), and his supplemental motion for injunctive relief (Doc. No. 14). These documents reflect that Plaintiff requests injunctive relief in the form of daily force feeding, receipt of three (3) containers of Ensure per day, and the preservation of camera footage. (Doc. Nos. 12 at 4-5, 14 at 21.) Plaintiff has also filed a motion seeking leave to file documents electronically using the Court's electronic filing system (Doc. No. 11), as well as another motion for temporary injunctive relief (Doc. No. 21). In that motion, Plaintiff asserts that $2.00 has been deducted from his prisoner account for each day that he has been on a hunger strike and argues that this deduction constitutes "fraud" and "embezzlement." (Id. at 1.) Plaintiff requests "immediate force feeding daily for (3) times a day w/o co-payment." (Id. at 3.)

### C. The Government's Brief in Opposition

The Government filed a brief in opposition (Doc. No. 17) to Plaintiff's various motions for preliminary injunctive relief in response to the Court's September 20, 2019 Order (Doc. No. 15) directing it to do so. The Government filed a declaration from Dr. Edinger and copies of Plaintiff's medical records in support of its brief. (Doc. No. 18.) The Government provides the following information regarding Plaintiff's hunger strike.

Plaintiff began his hunger strike on July 9, 2019. (Doc. No. 18 at 4.) As part of his hunger strike, he made the following demands: (1) a new housing assignment; (2) legal material; (3) soft shoes to support his lower back; (4) fittings for front dentures; (5) treatment for kidney and liver disease, as well as nerve medication; (6) double portions of meals for two (2) weeks; and (7) removal from the Special Management Unit ("SMU") or transfer to another facility. (Id. at 3 n.1.) As of September 23, 2019, Plaintiff purports to have missed 235 consecutive meals. (Id. at 4.) Plaintiff has received daily medical evaluations so that medical staff can assess his vital signs during the hunger strike. (Id.) On two (2) occasions, Plaintiff's weight increased, and staff believed that he was eating food provided to him by other inmates. (Id.) Plaintiff was moved to an observation cell for closer monitoring, at which point he began refusing drinking water, as well. (Id.)

Medical staff occasionally tested Plaintiff's blood to assess his nutrition as well as his kidney and liver functions. (Id.) When his health "dropped to a medically unacceptable level, he was brought to health services for involuntary nasogastric feeding." (Id.) At each nasogastric feeding, Plaintiff was offered, and refused, a tray of food. (Id.) He was also offered, and refused, the opportunity to drink Ensure dietary supplemental shakes. (Id. at 4-5.) Upon this refusal, a tube was placed into Plaintiff's nose and passed into his stomach, and the Ensure was

5

administered via the tube. (Id. at 5.) Plaintiff was informed of the risks of nasogastric feedings on each occasion. (Id.) Nasogastric feedings were discontinued once Plaintiff's "pre-albumin levels had risen back into the normal range." (Id.)

On September 16, 2019, medical staff noted that Plaintiff was significantly dehydrated. (Id.) "When multiple attempts to acquire IV access failed, the decision was made to pursue intraosseous IV hydration."[4] (Id.) When Plaintiff was informed of this procedure, "he immediately changed his mind and began to drink supplemental water, thus eliminating the need for IV hydration." (Id.) Dr. Edinger has been unable to convince Plaintiff to end his hunger strike despite explaining to Plaintiff multiple times "the short term and long term health consequences" of the strike. (Id.) Throughout the hunger strike, Plaintiff has "repeatedly refused" orders to exit his cell for daily health assessments. (Id.) The Use of Force team would then assemble, and Plaintiff would voluntarily submit to a medical evaluation only "when he was on camera." (Id.) Plaintiff would also leave his cell for involuntary feeding only once a Use of Force team had been assembled. (Id.)

On September 20, 2019, Dr. Edinger convinced Plaintiff to begin voluntarily consuming Ensure shakes in place of meals. (Id.) As of September 23, 2019, Plaintiff voluntarily drank Ensure for three (3) days. (Id.) Plaintiff "no longer requires involuntary nasogastric feeding as he is now voluntarily drinking Ensure supplemental shakes." (Id.) Dr. Edinger has informed Plaintiff, however, that "Ensure is a dietary supplement and by no means a dietary replacement" because it "does not contain all of the vital nutrients required to maintain a healthy body." (Id. at 6.)

---

[4] Intraosseous hydration "is a procedure where an IV catheter is inserted directly into the bone to acquire IV access. This is the standard of care for emergent IV access." (Doc. No. 18 at 5.)

6

## II. LEGAL STANDARD

### A. Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions. See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint

must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by

lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

**B.     Bivens Action**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

**C.     Preliminary Injunctive Relief**

Preliminary injunctive relief is extraordinary in nature and lies within the discretion of the trial judge. See Orson, Inc. v. Miramax Film Corp., 836 F. Spp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Bd. of Trs. of Bloomsburg State Coll., 353 F. Supp. 542 (M.D. Pa. 1973)). In determining whether to grant a motion seeking preliminary injunctive relief, courts within the Third Circuit consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complained of; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)). To show "irreparable injury" a plaintiff must demonstrate actual and immediate injury rather than a possibility of future harm. See Continental Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980). It is the moving party that bears the burden of demonstrating these factors. See Dorfman v. Moorhous, No. 93-cv-6120, 1993 WL 483166, at *1 (E.D. Pa. Nov. 24, 1993). "The

relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued." SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985). Furthermore, "there must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." See Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010)).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The key word in this consideration is irreparable. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

## III. DISCUSSION

### A. Plaintiff's Complaint

Having construed Plaintiff's pro se pleading liberally, the Court views the complaint as alleging violations of Plaintiff's Eighth Amendment rights with respect to the medical care he is receiving concerning his hunger strike. As noted above, Plaintiff has named Defendant Connors as the sole Defendant. Plaintiff's complaint neither sets forth any allegations against Defendant

10

Connors nor identifies how Defendant Connors engaged in any wrongdoing that violated Plaintiff's constitutional rights. While personal involvement for purposes of § 1983 may be established through allegations of personal direction or of actual knowledge and acquiescence, see Rode v. Dellarciprete, 845 F.2d 1195, 1297 (3d Cir. 1988), Plaintiff's pleading is inadequate because, at present, it fails to allege facts that give rise to a plausible claim for relief. See Hudson v. City of McKeesport, 244 F. App'x 519, 522 (3d Cir. 2007) (affirming the dismissal of one defendant because the complaint did not provide any basis for a claim against him). As a matter of law, under the standard articulated supra, these assertions do not suffice to state a claim against Defendant Connors. Accordingly, the Court will dismiss Plaintiff's complaint.

### B. Leave to Amend

Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182 (1962). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." See id. The Court must also determine whether a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court will permit Plaintiff to file an amended complaint that corrects the deficiencies identified herein. Plaintiff is advised that the amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed. The amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which he claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim.

### C. Plaintiff's Motions for Preliminary Injunctive Relief

As noted above, Plaintiff seeks several forms of preliminary injunctive relief, including the termination of Dr. Edinger's employment, kidney and liver treatment, soft sole shoes, dental work, placement in an outside hospital, medically adequate force feedings, three containers of Ensure per day, the preservation of video footage. The ostensible basis for Plaintiff's complaint, however, is that he has been denied adequate medical treatment because of how medical staff at USP Lewisburg have conducted his force feedings. Thus, the Court will deny Plaintiff's requests for preliminary injunctive relief, such as his requests for dental work, kidney and liver treatment, the termination of Dr. Edinger's employment, and soft sole shoes, all of which are completely unrelated to the injury claimed by Plaintiff in his complaint. See Jones v. Taylor, No. 3:12-cv-487, 2013 WL 1899852, at *2 (M.D. Pa. May 7, 2013) (noting that "a court may not grant an injunction when the issues raised in the motion are entirely different from those raised in the complaint").

With respect to Plaintiff's requests for preliminary injunctive relief related to his force feedings, Plaintiff has not demonstrated that he will suffer irreparable injury if he is not granted the relief he seeks. The Government's exhibits submitted in connection with its opposition brief demonstrate that Plaintiff is now voluntarily drinking Ensure. The Government's exhibits further indicate that Plaintiff no longer requires force feedings because he is voluntarily drinking Ensure. Plaintiff, therefore, has not demonstrated that he will suffer actual and immediate injury if the Court does not grant the preliminary relief he seeks. Accordingly, the Court will deny Plaintiff's various motions for preliminary injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for leave to proceed in forma pauperis (Doc. No. 19) and dismiss Plaintiff's complaint (Doc. No. 1) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will afford Plaintiff thirty (30) days from the date of the Order accompanying this Memorandum in which to file an amended complaint consistent with the Court's discussion herein. Plaintiff's various motions for preliminary injunctive relief (Doc. Nos. 6, 7, 12, 14, 21) will be denied. Plaintiff's motion to file electronically (Doc. No. 11) will be denied because this Court does not have an electronic filing program for use by incarcerated litigants. An appropriate Order follows.