**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FREDERICK GRAHAM,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-1571** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **IAN CONNORS, <u>et</u> <u>al</u>.,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the Court are <u>pro</u> <u>se</u> Plaintiff Frederick Graham ("Plaintiff")'s motion requesting a change of venue in the form of a transfer of the above-captioned case to the United States District Court for the Eastern District of Pennsylvania (Doc. No. 26), a motion seeking various forms of relief, including an extension of the thirty (30)-day deadline to file an amended complaint (Doc. No. 27), amended complaint (Doc. No. 28), motion requesting sanctions (Doc. No. 29), and supplement to the amended complaint (Doc. No. 30). For the following reasons, the Court will grant Plaintiff's motion requesting multiple forms of relief (Doc. No. 27) to the extent he requests an extension of time to amend, deem the operative pleading to consist of the amended complaint (Doc. No. 28) and supplement (Doc. No. 30), deem his amended complaint timely, dismiss Plaintiff's claims against all Defendants with the exception of his claims against Defendants Edinger and Viator, grant Plaintiff leave to file a second amended complaint, and deny his remaining motions.

**I.     BACKGROUND**

**A.     Procedural History**

On August 29, 2019, Plaintiff Frederick Graham ("Plaintiff"), who is presently confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg"), initiated the above-captioned action by filing a complaint pursuant to <u>Bivens v. Six Unknown Named Agents</u>

of Federal Bureau of Narcotics, 403 U.S. 388 (1971), in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 1.) In an Order dated September 4, 2019, that court transferred the action to this Court for further proceedings. (Doc. No. 4.)

On September 11, 2019, Plaintiff filed a motion for permanent injunctive relief (Doc. No. 6) and motion for a temporary injunction (Doc. No. 7). In an administrative Order dated September 12, 2019, the Court directed Plaintiff either to pay the requisite filing fee or file a completed motion for leave to proceed in forma pauperis within thirty (30) days. (Doc. No. 10.) On September 18, 2019, the Court received from Plaintiff a motion requesting permission to use the Court's electronic filing system (Doc. No. 11) and a motion pursuant to Local Rule 26.1(f) (Doc. No. 12). The next day, Plaintiff filed a supplement to his motion for a temporary injunction (Doc. No. 13) and a supplemental motion for injunction (Doc. No. 14).

In an Order dated September 20, 2019, the Court noted that in his supplement, Plaintiff requested an emergency court order on the basis that he is experiencing organ failure due to his hunger strike, which has caused him to miss at least 219 consecutive meals. (Doc. No. 15.) Plaintiff suggested that medical staff at USP Lewisburg were not providing adequate medical care in the form of a proper force-feeding protocol. (Id.) Given Plaintiff's allegations of immediate harm, the Court directed the Government to respond to Plaintiff's motions for injunctive relief by 12:00 p.m. on Monday, September 23, 2019. (Id.) The Government filed its brief in opposition (Doc. No. 17) and exhibits in support thereof (Doc. No. 18) on September 23, 2019.

On September 23, 2019, Plaintiff filed a motion for leave to proceed in forma pauperis (Doc. No. 19), a copy of his prisoner trust fund account statement (Doc. No. 20), and a motion for a temporary injunction (Doc. No. 21). In an administrative Order dated September 23, 2019,

the Court directed the Warden of USP Lewisburg to provide to the Court, within fifteen (15) days, a certified copy of Plaintiff's inmate account statement.  (Doc. No. 22.)  The Court received the certified statement on September 30, 2019.  (Doc. No. 23.)  In a Memorandum and Order dated October 9, 2019, the Court granted Plaintiff leave to proceed in forma pauperis, dismissed his complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and denied his various motions for relief.  (Doc. Nos. 24, 25.)  The Court granted Plaintiff leave to file an amended complaint within thirty (30) days.  (Doc. No. 25.)  Presently before the Court are Plaintiff's amended complaint (Doc. No. 28), various motions for relief (Doc. Nos. 26, 27, 29), and supplement to the amended complaint (Doc No. 30).

### B.  Plaintiff's Amended Complaint

In his amended complaint, Plaintiff names as Defendants the Department of Health, Education, and Welfare ("DHEW"), Bureau of Prisons ("BOP") Director Kathleen Hawk Sawyer ("Sawyer"), Attorney General William Barr ("Barr"), BOP National Appeals Administrator Ian Connors ("Connors"), BOP Regional Counsel Darrin Howard ("Howard"), Dr. Andrew Edinger ("Edinger"), dentist P. Viator ("Viator"), D.J. Ebbert ("Ebbert"), and J. Konkle ("Konkle").  (Doc. No. 28 at 2-3.)  In his supplement, Plaintiff indicates that he also seeks to proceed against Corizon as a Defendant.  (Doc. No. 30 at 1.)  Although Plaintiff's amended complaint is difficult to interpret at times, the Court has provided the following summary of Plaintiff's allegations, particularly focusing on those against the named Defendants.

Plaintiff seeks to hold Defendant Sawyer responsible as the "enforcer of the pattern of conduct composed of a series of extremely harsh inhumane conditions of confinement."  (Id. at 5.)  Plaintiff maintains that he arrived at USP Lewisburg's Special Management Unit ("SMU")

on October 22, 2018 and has subsequently been drugged, provided meals that contain urine, given water that contains "black particles," and had a microchip placed in his food. (Id.) Plaintiff vaguely asserts that he has "suffered credible threats" by way of an electronics communications device. (Id.) He faults Defendant Sawyer further for providing "free gender dysphoria/hormone pills for homosexual federal prisoners that prey and sexually harass Plaintiff, verbally terrorize, torment, [and] annoy through their conduct." (Id. at 7.)

With respect to Defendant Barr, Plaintiff alleges that he oversees several individuals who "govern[ed] a 'capital punishment' trial dating back to (2009), where Plaintiff was a (key) witness and has been harassed by J. Konkle." (Id. at 9.) Plaintiff maintains that he "has received credible threats by being the only witness to witness (4) D.C. inmates allegedly conspire in murdering a federal inmate while [Plaintiff] was inside of [his] cell at U.S.P. Beaumont, Tx in (May 2005)." (Id.) Plaintiff alleges that the prosecutor forced him to walk from Houston, Texas, to St. Louis, Missouri "because he established (actual innocence) of Joseph Ebron." (Id.)

With respect to Defendant Edinger, Plaintiff first alleges that he denied him treatment during Plaintiff's hunger strike. (Id. at 5; Doc. No. 30 at 2-3.) Plaintiff maintains further that Defendant Edinger denied "all treatments," including prescriptions from an outside specialist and soft shoes. (Doc. No. 28 at 6.) According to Plaintiff, he was placed on a top bunk in a top tier and denied the Dilaudid that had been prescribed to him by an outside provider. (Id.) Plaintiff further faults Defendant Edinger for failing to send him to an outside provider when Plaintiff experienced "continued organ/kidney/liver failure from a history of elevated enzymes." (Id. at 13.) Plaintiff further suggests that he has not been provided treatment for various ailments, including scoliosis, chronic pain, cervical spine injuries, and degenerative joint disease. (Id.)

With respect to Defendant Viator, Plaintiff alleges that he has refused to pull and replace Plaintiff's fillings.  (Id. at 13.)  He also suggests that Defendant Viator refuses Plaintiff annual dental examinations and cleanings and refuses to refer Plaintiff to an outside dentist.  (Id. at 14.) Plaintiff further alleges that Defendant Viator is "refusing to follow through with procedures" by failing to replace Plaintiff's partial dentures.  (Doc. No. 30 at 6.)  Specifically, he states Defendant Viator's refusal to create impressions for new partial dentures has caused him to develop fistulas and abscesses around his gum line and that he has been denied antibiotics for those conditions.  (Id. at 4-6.)

With respect to Defendant Corizon, Plaintiff maintains that its contractors have "created multiple issues" within the BOP "with federal prisoners behind staging staff on inmate assaults, medical fraud by female staff and homosexual personnel that demand gratifying (gratification) or they will exceed their descriptions daily by creating hostility throughout the workplace/environment, brutally assault, drug/poison, and allow death by torture/suicide."  (Doc. No. 30 at 2.)  Plaintiff also appears to suggest that Defendant Corizon is liable for the inadequate medical care provided by Defendants Edinger and Viator.  (Id. at 2, 3.)

With respect to Defendant Howard, Plaintiff faults him for denying his tort claims seeking damages for his "MP3 player, purchase[d] songs (music), receipted food items . . . and shoes, also gold teeth."  (Doc. No. 28 at 8, 12.)  Plaintiff also faults Defendant Connors for denying his various grievances, causing the administrative remedy program to be rendered "unavailable" for purposes of his previously-filed lawsuits.  (Id. at 11.)  As to Defendants Ebbert and Konkle, Plaintiff mentions that in December of 2018, they authorized Lieutenant Kolwalchick to use OC spray on him.  (Id. at 8.)  Plaintiff maintains further that Defendant Ebbert allowed Defendant Edinger "to persist in a conduct and course of treatment known to be

ineffective." (Id. at 14.) Plaintiff also alleges that Defendants Ebbert and Konkle allowed CO Segraves to tamper with Plaintiff's food trays. (Id. at 15.) Plaintiff asserts that CO Segraves put chemical agents in his food and water, black particles in his water, and refused to provide a spoon with each meal. (Id.) Plaintiff mentions further that on December 17, 2019[1] he was placed in an "extremely (hot) cell" and "refused soap, toilet paper, [a] shower, or [permission] to defecate or urinate." (Id.) Finally, Plaintiff maintains that Defendant Ebbert "interfered with multiple forms of complaints" regarding a "failure to provide trial/sentence transcripts from C.O. Righel." (Id. at 16.)

Plaintiff seeks various forms of relief in his amended complaint. He requests damages from each named Defendant, as well as the provision of several amenities, including a cane, unlimited Ensure, brain surgery, a medical transfer, and injections. (Id. at 6.) Plaintiff also requests conjugal visits, handheld tablets, the restoration of cigarettes and chewing tobacco to commissary, the firing and resignation of various officials, and a sentence reduction. (Id. at 7-8, 10.)

## II.    LEGAL STANDARD

### A.    Screening and Dismissal of Prisoner Complaints

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners

---

[1] The Court recognizes that this date had not yet passed when Plaintiff filed his amended complaint. However, this is the date that Plaintiff provides.

proceeding in forma pauperis and prisoners challenging prison conditions. See id.

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines

that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42

U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss

any action brought with respect to prison conditions under section 1983 of this title . . . by a

prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that

the action . . . fails to state a claim upon which relief can be granted.").

        In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the

standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure. See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D.

Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim

under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a

complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v.

Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint

pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal

Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a civil complaint

must set out "sufficient factual matter" to show that its claims are facially plausible. See

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is

liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P.

8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual

allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See Iqbal, 556 U.S. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

**B.**     **Bivens Action**

A Bivens civil rights action asserted under § 1331 is evaluated using the same standards applicable to a § 1983 civil rights action. See Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F. Supp. 1486, 1492 (M.D. Pa. 1992). To state a claim under Bivens, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. See Young v. Keohane, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

**C.      Preliminary Injunctive Relief**

Preliminary injunctive relief is extraordinary in nature and lies within the discretion of the trial judge.  See Orson, Inc. v. Miramax Film Corp., 836 F. Spp. 309, 311 (E.D. Pa. 1993) (citing Skehan v. Bd. of Trs. of Bloomsburg State Coll., 353 F. Supp. 542 (M.D. Pa. 1973)).  In determining whether to grant a motion seeking preliminary injunctive relief, courts within the Third Circuit consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the conduct complained of; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest.  See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)).  To show "irreparable injury" a plaintiff must demonstrate actual and immediate injury rather than a possibility of future harm.  See Cont'l Grp., Inc. v. Amoco Chem. Corp., 614 F.2d 351, 359 (3d Cir. 1980).  The moving party bears the burden of demonstrating these factors.  See Dorfman v. Moorhous, No. 93-cv-6120, 1993 WL 483166, at *1 (E.D. Pa. Nov. 24, 1993).  "The relevant inquiry is whether the movant is in danger of suffering irreparable harm at the time the preliminary injunction is to be issued."  SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1264 (3d Cir. 1985).  Furthermore, "there must be a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  See Ball v. Famiglio, 396 F. App'x 836, 837 (3d Cir. 2010) (internal quotation marks omitted) (quoting Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010)).

Moreover, "[t]he 'requisite feared injury or harm must be irreparable – not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone

for it.'" See ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir. 1987) (quoting Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)). "In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989). "The key word in this consideration is irreparable. . . . The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974).

## III.    DISCUSSION

### A.    Plaintiff's Various Motions

#### 1.    Plaintiff's Motion to Transfer (Doc. No. 26)

As noted above, Plaintiff requests a change of venue in the form of a transfer of the above-captioned case to the United States District Court for the Eastern District of Pennsylvania, the district from which this case was initially transferred. (Doc. No. 26.) A civil action, however, may be filed in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action situated." See 28 U.S.C. § 1391(b)(2). As the Eastern District of Pennsylvania noted in its Order transferring the above-captioned case to this Court, Plaintiff's suit involves events that occurred at USP Lewisburg, which is located in Union County, Pennsylvania. (Doc. No. 4.) Union County is located within this judicial district. See 28 U.S.C. § 118(b). Venue for the above-captioned case, therefore, is properly within this Court. Accordingly, the Court will deny Plaintiff's first motion for relief. (Doc. No. 26.)

### 2. Plaintiff's Motion Seeking Various Forms of Relief (Doc. No. 27)

In his second motion for relief, Plaintiff reiterates several of the requests for injunctive relief raised in his previous motions, asks the Court to find USP Lewisburg's inmate mail correspondence procedures unconstitutional, and requests the appointment of counsel and a stay or continuance of the thirty (30)-day deadline to file an amended complaint. (Doc. No. 27.) As an initial matter, the Court will grant this motion to the extent Plaintiff requests an extension of the deadline to file an amended complaint and deem his amended complaint (Doc. No. 28) timely filed. With respect to his requests for injunctive relief, Plaintiff has again failed to demonstrate that he will suffer actual and immediate injury if the Court does not grant the preliminary relief he seeks. See Cont'l Grp., Inc., 614 F.2d at 359 (noting that to show "irreparable injury" for purposes of preliminary injunctive relief, a plaintiff must demonstrate actual and immediate injury, rather than only a possibility of future harm).

With respect to Plaintiff's request for counsel, although prisoners have no constitutional or statutory right to the appointment of counsel in civil cases, district courts have broad discretionary power to appoint counsel for indigent civil litigants under 28 U.S.C. § 1915(e)(1). See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002). In Tabron v. Grace, the Third Circuit developed a non-exhaustive list of factors to aid district courts in determining whether to appoint counsel for such litigants. See Tabron v. Grace, 6 F.3d 147, 155-57 (3d Cir. 1993). Such factors include: the plaintiff's ability to present his case; the complexity of the legal and discovery issues in the case; the amount of factual investigation that will be required; the necessity of expert witnesses; and whether "witness credibility is a key issue." See id. Additionally, "[a]s a threshold matter, a district court must assess whether the claimant's case has some arguable merit in fact and law." See Montgomery, 294 F.3d at 498-99 (citing Tabron,

6 F.3d at 155). Finally, "[t]he plaintiff's ability to present a case is '[p]erhaps the most significant' consideration and depends on factors such as 'the plaintiff's education, literacy, prior work experience, and prior litigation experience . . . along with a plaintiff's ability to understand English . . . [and] the restraints placed upon a prisoner plaintiff by confinement.'" See Nunuez v. Wetz, Civ. No. 14-cv-0727, 2017 WL 4698092, at *1 (M.D. Pa. Oct. 19, 2017) (quoting Montgomery, 294 F.3d at 501).

The Court concludes that the Tabron factors do not warrant appointing counsel at this time. Plaintiff has the apparent ability to read, write, and understand English, as well as the ability to litigate this action pro se, as demonstrated by his filing of a complaint and amended complaint, motion for leave to proceed in forma pauperis, and numerous motions for preliminary injunctive relief. Accordingly, there is no indication that Plaintiff "presently suffers from any impediment unusual to other pro se litigants that appear before this Court." See Segura v. Wetzel, Civ. No. 17-0931, 2017 WL 3495184, at *2 (M.D. Pa. Aug. 14, 2017). Additionally, contrary to Plaintiff's assertion, the legal issues in this case are not complex, and this Court's duty to construe pro se pleadings liberally, see Riley v. Jeffes, 77 F.2d 143, 147-48 (3d Cir. 1985), coupled with Plaintiff's apparent ability to litigate this action, militates against the appointment of counsel at this time. The Court, therefore, declines to appoint counsel for Plaintiff. In the event that future proceedings demonstrate the need for counsel, however, the Court may reconsider this matter either sua sponte or upon a motion properly filed by Plaintiff.

### 3.  Plaintiff's Motion for Sanctions (Doc. No. 29)

In his motion for sanctions, Plaintiff again requests electronic filing privileges and asks that Defendants be sanctioned for "intentionally not having a constitutional practice for accepting and deliveries of legal material." (Doc. No. 29 at 1.) Plaintiff also reiterates his request to

receive four (4) cartons of Ensure three (3) times daily.  (Id.)  As the Court informed Plaintiff previously, this Court does not have an electronic filing program for use by incarcerated litigants. Moreover, with respect to Plaintiff's request for injunctive relief, Plaintiff has again failed to demonstrate that he will suffer actual and immediate injury if the Court does not grant the preliminary relief he seeks.  See Cont'l Grp., Inc., 614 F.2d at 359.  Furthermore, with respect to Plaintiff's request for sanctions, the Court notes that Plaintiff has not complied with Rule 11 of the Federal Rules of Civil Procedure by including his request with other requests for relief.  See Fed. R. Civ. P. 11(c)(2) (noting that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)").  In any event, nothing before the Court suggests that Defendants are acting in bad faith such that the imposition of sanctions would be warranted.  See In re Schaefer Salt Recovery, Inc., 542 F.3d 90, 97 n.3 (3d Cir. 2008).  Accordingly, Plaintiff's motion (Doc. No. 29) will be denied.

### B.    Plaintiff's Amended Complaint

#### 1.    Failure to Comply with Rule 8 of the Federal Rules of Civil Procedure

In its October 9, 2019 Memorandum, the Court advised Plaintiff that his amended complaint "should set forth [his] claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure."  (Doc. No. 24 at 12.)  The Court further advised that the amended complaint "should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which he claims violated his rights."  (Id.)  Plaintiff's amended complaint, however, fails to comply with these directives.  Rather than raising his allegations in one pleading, Plaintiff has submitted several documents in a piecemeal fashion.  As noted previously, Plaintiff's amended complaint is difficult to read, rendering the basis for his claims difficult to ascertain.  Dismissal under Rule 8

of the Federal Rules of Civil Procedure is proper when a complaint leaves "the defendants having to guess what of the many things discussed constituted [a cause of action]," see Binsack v. Lackawanna Cty. Prison, 438 F. App'x 158, 160 (3d Cir. 2011), or when the complaint is so "rambling and unclear" as to defy response. See Tillio v. Spiess, 441 F. App'x 109, 110 (3d Cir. 2011). In the above-captioned case, the manner in which Plaintiff has prepared his amended complaint leaves the Court with no option but to guess what claims for relief Plaintiff seeks to assert. For that reason alone, Plaintiff's amended complaint is subject to dismissal. The Court, however, discusses Plaintiff's purported claims against the named Defendants below.

## 2. Claims Against the DHEW

Plaintiff seeks to proceed against the DHEW in his amended complaint. As an initial matter, the DHEW no longer exists because it "has since split into two departments, the Department of Education, and the Department of Health and Human Services ('HHS')." See Berndsen v. N.D. Univ. Sys., 395 F. Supp. 3d 1194, 1197 (D.N.D. 2019). In any event, even if the DHEW were still in existence, Plaintiff could not maintain his Bivens action against it. See F.D.I.C. v. Meyer, 510 U.S. 471, 472 (1994) ("The logic of Bivens itself does not support the extension of Bivens from federal agents to federal agencies."). Accordingly, Plaintiff's claims against the DHEW are subject to dismissal.

## 3. Claims Regarding Denial of Grievances and Administrative Remedies

It appears that Plaintiff attempts to assert claims against Defendants Connors, Howard, and Ebbert by virtue of their participation in after-the-fact review of his grievances and administrative remedies concerning various issues he has encountered while incarcerated by the BOP. Inmates, however, do not have a constitutional right to prison grievance procedures. See Lions v. Wetzel, No. 1:13-cv-2952, 2015 WL 2131572, at *6 (M.D. Pa. May 6, 2015). The

filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, do not establish the involvement of officials and administrators in any underlying constitutional deprivation. See Pressley v. Beard, 266 F. App'x. 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."); Brooks v. Beard, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying constitutional deprivation); Ramos v. Pa. Dep't of Corr., No. 06-1444, 2006 WL 2129148, at *3 (M.D. Pa. July 27, 2006) ("[C]ontentions that certain correctional officials violated an inmate's constitutional rights by failing to follow proper procedure or take corrective action following his submission of an institutional grievance are generally without merit."); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) (noting that a complaint alleging that prison officials failed to respond to the inmate plaintiff's grievance does not state a constitutional claim), aff'd, 142 F.3d 430 (3d Cir. 1998); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (concluding that where a defendant, after being informed of the violation through the filing of grievances, reports, or appeals, failed to take action to remedy the alleged wrong is not enough to show that the defendant had the necessary personal involvement); Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985) (concluding that a mere "linkage in the prison chain of command" is not sufficient to demonstrate personal involvement for purposes of a civil rights action).

Consequently, any claims asserted by Plaintiff in an attempt to establish liability against Defendants Connors, Howard, and Ebbert based solely upon the substance of their respective

responses, or lack thereof, to his grievances or administrative remedies do not support a constitutional claim. See Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (providing that the involvement in post-incident grievance process is not a basis for liability); see also Brooks, 167 F. App'x at 925; Ramos, 2006 WL 2129148, at *3. Accordingly, the Court will dismiss Plaintiff's claims against Defendants Connors and Howard and will dismiss his claims regarding dissatisfaction with the grievance process against Defendant Ebbert.

### 4.    Claims Asserting Supervisory Liability

It also appears that Plaintiff attempts to assert claims against Defendants Sawyer, Barr, Ebbert, and Konkle based upon their respective supervisory positions within the Department of Justice and the BOP. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." See Iqbal, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to Bivens and 42 U.S.C. § 1983: (1) "a supervisor may be personally liable under § 1983 [and Bivens] if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 and Bivens "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." See Merring v. City of Carbondale, 558 F.

Supp. 2d 540, 547 (M.D. Pa. 2008) (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff's amended complaint fails to set forth plausible supervisory liability claims against Defendants Sawyer, Barr, Ebbert, and Konkle.  For example, Plaintiff faults Defendant Sawyer for authorizing the provision of "free gender dysphoria/hormone pills for homosexual federal prisoners that prey and sexually harass Plaintiff."  (Doc. No. 28 at 7.)  While "[t]he Eighth Amendment imposes a general duty on prison officials to protect inmates from violence by other prisoners," <u>see</u> <u>Nifas v. Coleman</u>, 528 F. App'x 132, 135 (3d Cir. 2013) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994)), nothing in Plaintiff's amended complaint plausibly suggests that Defendant Sawyer's alleged policy caused Plaintiff to be exposed to a risk of serious harm from other inmates.  <u>See</u> <u>id.</u>  Moreover, Plaintiff's allegation that Defendants Ebbert and Konkle authorized Lieutenant Kolwalchick to use OC spray on Plaintiff does not, without more, establish a plausible claim of supervisory liability.  Furthermore, it appears that Plaintiff seeks to hold Defendant Barr liable based solely upon his position as Attorney General of the United States.  Accordingly, because Plaintiff has not set forth plausible supervisory claims against them, the Court will dismiss his claims against Defendants Sawyer, Barr, Ebbert, and Konkle.

### 5. Claims Against Defendants Edinger and Viator

Plaintiff's amended complaint asserts various allegations against Defendants Edinger and Viator regarding the denial of medical and dental care.  For example, Plaintiff maintains that Defendant Edinger denied him treatment during a hunger strike, denied him prescriptions that were issued by an outside provider, denied him the use of soft shoes, failed to send him to an outside provider, and failed to provide treatment for various ailments.  (Doc. No. 28 at 5-6, 13.)

Plaintiff asserts further that Defendant Viator has refused to pull and replace his fillings and refuses to provide annual dental examinations, cleanings, and referrals to an outside dentist. (Id. at 13-14.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs. See Farmer, 511 U.S. at 834, 837; Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Rouse, 182 F.3d at 197.

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  See White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990); see also Pearson v. Prison Health Servs., 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."); Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment[,] his behavior will not violate a prisoner's constitutional rights.").  If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician.  See Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp., 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); Little v. Lycoming Cty., 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996).  Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate indifference.  See Pearson, 850 F.3d at 535; Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Moreover, a prison doctor's use of a treatment regimen different than that prescribed by a private physician does not necessarily amount to deliberate indifference.  See Johnson v. Cash, 557 F. App'x 102, 104 (3d Cir. 2013) (citing McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977)).  The question is, therefore, "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants."  See Jacobs v. Lisiak, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  In light of Plaintiff's allegations against Defendants Edinger and Viator, as set forth above, the Court

concludes that Plaintiff has set forth plausible Eighth Amendment claims against these Defendants. Accordingly, Plaintiff's claims against Defendants Edinger and Viator can proceed at this time.

### 6. Claims Against Defendant Corizon

As a private corporation contracted to provide prison health services, Defendant Corizon may be liable under § 1983 for actions taken under color of state law. See Dawson v. Sup't Glunt, No. 1:15-cv-1635, 2016 WL 3751960, at *2 (M.D. Pa. July 13, 2016). However, private corporations like Defendant Corizon may not be held liable under a theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Rather, Plaintiff must allege that he suffered a constitutional violation as a result of one or more of Corizon's policies or customs. See Dawson, 2016 WL 3751960, at *2 (citing B.S. v. Somerset Cty., 704 F.3d 250, 275 (3d Cir. 2013)). In the instant case, Plaintiff fails to allege that Defendant Corizon had a custom or policy that caused deliberate indifference to his medical needs. See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009) (noting that a plaintiff seeking to assert a Monell claim "must identify a custom or policy, and specify what exactly that custom or policy was"). Accordingly, Plaintiff's claims against Defendant Corizon are subject to dismissal.

### 7. Other Deficiencies in Plaintiff's Amended Complaint

Throughout his amended complaint, Plaintiff references microchips and asserts that microchips have been placed into his food. (Doc. No. 29 at 5.) He also suggests that LSD has been placed into his food. (Id.) Quite simply, Plaintiff's claims that he has been harmed in this manner are subject to dismissal as frivolous. See Simmons v. Beard, No. 3:13-254, 2013 WL 2147811, at *3 (M.D. Pa. May 16, 2013). Plaintiff also references his incarceration in other institutions, such as USP Beaumont and USP Florence. Those institutions, however, are not

located within the Middle District of Pennsylvania and, therefore, this Court is not the proper

venue for Plaintiff to assert such claims. See 28 U.S.C. § 1391(b)(2) (noting that venue is proper

in "a judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred"). Accordingly, any claims that Plaintiff seeks to raise regarding his

incarceration at those institutions are subject to dismissal for improper venue. Accordingly, any

claims that Plaintiff seeks to raise regarding his incarceration at those institutions are subject to

dismissal for improper venue. See 28 U.S.C. § 1406(a).

       **C.**     **Leave to Amend**

      Due to the applicable liberal pleading standard, a plaintiff should generally be granted

leave to amend before a Court dismisses a claim that is merely deficient. See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure

allow for amendments to be granted liberally in light of the "principle that the purpose of

pleading is to facilitate a proper decision on the merits." See Foman v. Davis, 371 U.S. 178, 182

(1962). The Court may deny a motion to amend where there is "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [or] futility of the amendment." See id. The Court must also determine whether a

proposed amendment would be futile if the complaint, as amended, would not survive a motion

to dismiss for failure to state a claim upon which relief may be granted. See In re NAHC, Inc.

Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

      Based on the foregoing, the Court will permit Plaintiff the opportunity to file a second

amended complaint that corrects the deficiencies identified herein with respect to his claims

against all Defendants except for the DHEW. Once again, Plaintiff is advised that the second

amended complaint must be complete in all respects and may not consist of multiple documents. It must be a new, single pleading that stands by itself without reference to the original complaint or any other document already filed. The second amended complaint should set forth Plaintiff's claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered. It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts which he claims violated his rights. Mere conclusory allegations will not set forth a cognizable claim. The second amended complaint should also not raise claims regarding Plaintiff's incarceration at institutions outside of this judicial district and should not raise frivolous claims, such as claims regarding the placement of microchips and LSD in his food. Plaintiff is strongly encouraged to use the Court's civil rights complaint form, which the Court will direct the Clerk of Court to provide, in preparing his second amended complaint.

## IV.	CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion seeking multiple forms of relief (Doc. No. 27) to the extent Plaintiff requests an extension of time to amend, deem his amended complaint timely, deem the operative pleading to consist of the amended complaint (Doc. No. 28) and supplement (Doc. No. 30), dismiss Plaintiff's claims against all Defendants with the exception of Defendants Edinger and Viator, and deny his remaining motions. Plaintiff will be permitted to file a second amended complaint consistent with the Court's discussion herein. An appropriate Order follows.